**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

| | |
|---|---|
| ROBERT BRITT, | : |
| | : |
| Petitioner, | :      Civ. No. 18-16357 (PGS) |
| | : |
| v. | : |
| | : |
| UNITED STATES OF AMERICA, | :      **OPINION** |
| | : |
| Respondent. | : |

---

**PETER G. SHERIDAN, U.S.D.J.**

## I.      INTRODUCTION

Petitioner, Robert Britt (hereinafter "Petitioner" or "Britt"), is a federal inmate proceeding *pro se* with a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Also pending before this Court is Petitioner's motion to amend his § 2255 motion. For the following reasons, Petitioner's motion to amend will be denied. Additionally, all but one claim in Petitioner's § 2255 motion are denied and a certificate of appealability shall not issue on those claims. An evidentiary hearing though is necessary on one of Petitioner's claims.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

Petitioner, along with several other individuals, was charged in a criminal complaint on March 26, 2014 with conspiracy to distribute one kilogram or more of heroin. (*See* Crim. No. 16-403-1 ECF 1). At that time, Petitioner was serving a state criminal sentence. Petitioner had his initial appearance on August 6, 2014, where he waived his rights under the Interstate Agreement on Detainers to remain in federal custody and elected to be returned to state custody. (*See id.* ECF 176). Over the next two years, Petitioner's counsel agreed to numerous continuances to further facilitate plea negotiations.

On September 8, 2016, a federal grand jury returned a one count indictment against Petitioner for conspiracy with intent to distribute one hundred grams or more of heroin. (*See id.* ECF 288). On July 10, 2017, Petitioner entered into a plea agreement. (*See id.* ECF 306). The plea agreement stipulated to a recommended sentence of 144 months pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). (*See id.* at 3). On December 7, 2017, this Court entered judgment against Petitioner and sentenced him to 144 months imprisonment. (*See id.* ECF 312). Petitioner did not file a direct appeal.

Petitioner submitted his original § 2255 motion in November, 2018. (*See* ECF 1). On November 29, 2018, this Court received a letter from Petitioner seeking to add another claim to this action. In December, 2018, this Court administratively terminated this matter because Petitioner had not filed his original § 2255 motion on the proper form. (*See* ECF 6). Thereafter, Petitioner submitted another § 2255 motion in December, 2018. (*See* ECF 7). On February 15, 2019, this Court issued a notice and order on Petitioner as his December 2018 § 2255 motion appeared to abandon claims that had been raised in Petitioner's November, 2018 filings. (*See* ECF 8). On March 1, 2019, this Court received Petitioner's response stating that he did not wish to abandon the claims he raised in his November, 2018 filings. Accordingly, the following claims are raised by Petitioner:

1. Ineffective assistance of counsel for failing to assert that the Interstate Agreement on Detainers Act ("IADA") Anti-Shuttling Provision ("Claim I")

2. Ineffective assistance of counsel for failing to object to Petitioner's career offender designation ("Claim II")

3. Ineffective assistance of counsel for failing to raise a § 5G1.3 sentencing issue ("Claim III")

4. Ineffective assistance of counsel for failing to raise a post-accusation delay dismissal of indictment ("Claim IV")

5. Ineffective assistance of counsel for failing to object to a three-level sentencing enhancement ("Claim V")

6. Sham prosecution ("Claim VI")

Respondent was ordered to file a response to Petitioner's claims. (*See* ECF 10). Respondent then received two extensions of time in which to file a response. (*See* ECF 15 & 17). Prior to Respondent filing its response, Petitioner filed a motion to amend on September 19, 2019. (*See* ECF 18). Petitioner sought to add a claim to this action that counsel was ineffective for failing to object to the drug quantity stated in the indictment.

Respondent filed a response in opposition to Petitioner's six claims on September 23, 2019. (*See* ECF 19). Thereafter, Respondent filed a response in opposition to Petitioner's motion to amend (*see* ECF 23) and Petitioner filed a reply in support of his claims. (*See* ECF 24). Petitioner's six claims and his motion to amend are now ready for adjudication.

## III.   LEGAL STANDARD

A motion to vacate, set aside or correct a sentence of a person in federal custody pursuant to 28 U.S.C. § 2255 entitles a prisoner to relief if "the court finds . . . [t]here has been such a denial or infringement of the constitutional rights of the prisoner as to render judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). "In considering a motion to vacate a defendant's sentence, 'the court must accept the truth of the movant's factual allegations unless they are clearly frivolous based on the existing record.'" *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (quoting *Gov't of Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989)) (citing R. Governing § 2255 Cases R. 4(b)). A District Court "is required to hold an evidentiary

hearing 'unless the motion and files and records of the case show conclusively that the movant is not entitled to relief.'" *Id.* (quoting *Forte*, 865 F.2d at 62). The Third Circuit has stated that this standard creates a "'reasonably low threshold for habeas petitioners to meet.'" *Id.* (quoting *United States v. McCoy*, 410 F.3d 124, 134 (3d Cir. 2005) (quoting *Phillips v. Woodford*, 267 F.3d 966, 973 (9th Cir. 2001))). Accordingly, this Court abuses its discretion "if it fails to hold an evidentiary hearing when the files and records of the case are inconclusive as to whether the movant is entitled to relief." *Id.* (citing *McCoy*, 410 F.3d at 134).

## IV.    DISCUSSION

### A.   Claim I

Petitioner's first claim is that counsel was ineffective for failing to assert a violation of the IADA's anti-shuttling provision. The Sixth Amendment guarantees effective assistance of counsel. In *Strickland v. Washington,* 466 U.S. 668 (1984), the Supreme Court articulated the two-prong test for demonstrating when counsel is deemed ineffective. First, the petitioner must show that considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *See id.* at 688; *see also Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013) (noting that it is necessary to analyze an ineffectiveness claim considering all circumstances) (citation omitted). A petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. *See Strickland*, 466 U.S. at 690. Under this first prong of the *Strickland* test, scrutiny of counsel's conduct must be "highly deferential." *See id.* at 689. Indeed, "[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The reviewing court must make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to

evaluate the conduct from counsel's perspective at the time." *Id.* at 689. If counsel makes "a thorough investigation of law and facts" about his plausible options, the strategic choices he makes accordingly are "virtually unchallengeable." *Gov't of Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1432 (3d Cir. 2006) (citing *Strickland*, 466 U.S. at 690-91). If, on the other hand, counsel pursues a certain strategy after a less than complete investigation, his choices are considered reasonable "to the extent that reasonable professional judgments support the limitations on investigation." *Rolan v. Vaughn*, 445 F.3d 671, 682 (3d Cir. 2006) (citing *Strickland*, 466 U.S. at 690-91).

The second prong of the *Strickland* test requires the petitioner to affirmatively prove prejudice. *See* 466 U.S at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*; *see also McBridge v. Superintendent, SCI Houtzdale*, 687 F.3d 92, 102 n.11 (3d Cir. 2012). "This does not require that counsel's actions more likely than not altered the outcome, but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011) (internal quotation marks and citations omitted).

"With respect to the sequence of the two prongs, the *Strickland* Court held that 'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies…. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice... that course should be

followed.'" *Rainey v. Varner*, 603 F.3d 189, 201 (3d Cir. 2010) (quoting *Strickland*, 466 U.S. at

697).

As explained by a panel of the United States Court of Appeals for the Third Circuit:

> The Interstate Agreement on Detainers is an interstate compact
> entered into by 48 States . . . the federal Government, and the
> District of Columbia. 18 U.S.C. App. 2, § 2; 42 Pa. Cons. Stat. §
> 9101. It creates uniform procedures for resolving one State's
> pending charges against an individual imprisoned by another State.
> *Alabama v. Bozeman,* 533 U.S. 146, 148, 121 S. Ct. 2079, 150 L
> .Ed. 2d 188 (2001); *282 New York v. Hill,* 528 U.S. 110, 111, 120
> S. Ct. 659, 145 L. Ed. 2d 560 (2000). Article III extends to
> prisoners against whom a detainer is lodged the right to demand
> final disposition on the pending charges within 180 days of release
> to the charging jurisdiction unless good cause exists for a
> continuance. 18 U.S.C. App. 2, § 2, Art. III(a). Article IV gives
> "the jurisdiction in which an untried indictment, information, or
> complaint is pending" the right "to have a prisoner against whom"
> it "has lodged a detainer ... made available" for trial. *Id.* Art. IV(a).
> If it secures custody of the prisoner, the State that lodged the
> detainer (the "receiving state") must bring the prisoner to trial
> within 120 days. *Id.* Art. IV(c). An "anti-shuttling provision"
> further requires the receiving state to retain custody of the prisoner
> until disposition of the charges. *Id.* Art. IV(e). Absent a waiver,
> transfer of the prisoner back to the sending state results in
> dismissal, with prejudice, of the charges pending in the receiving
> state. *Id.; see Bozeman,* 533 U.S. at 156, 121 S. Ct. 2079 (holding
> that the IAD commands dismissal of charges even for a one-day
> transgression of the anti-shuttling provision).

*United States v. Hornick*, 491 F. App'x 277, 281–82 (3d Cir. 2012) (footnote omitted). New

Jersey has adopted the IADA. *See Taveras v. United States*, No. 09-6042, 2010 WL 1644031, at

*2 (D.N.J. Apr 22, 2010) (citing N.J. Stat. Ann. § 2A:159-1, *et seq.*) (other citation omitted).

Petitioner states that he was serving a state sentence at Bayside State Prison in New

Jersey when the Federal Bureau of Investigation lodged a detainer against him. He claims that

the IADA anti-shuttling provision was violated because he was returned to state prison after his

presence was secured in this Court several times.

At Petitioner's initial appearance on August 6, 2014, Petitioner was informed about his rights under the IADA's anti-shuttling provision. He waived those rights at that time. (*See* Crim. No. 16-403 ECF 176). Given this waiver by Petitioner, counsel was not ineffective for failing to raise an IADA anti-shuttling argument. *See United States v. Rossetti*, 768 F.2d 12, 19 (1st Cir. 1985) (intelligent and voluntary waiver of IADA anti-shuttling rights precludes claim that counsel was ineffective for not pressing an IADA defense); *United States v. Moses*, No. 95-6581, 1996 WL 363921, at *3 (E.D. Pa. July 1, 1996) (counsel's failure to advise defendant that he could pursue an IADA defense was not ineffective where petitioner previously waived his rights under the IADA). Accordingly, Claim I is denied.

B. Claim II

In Claim II, Petitioner asserts that counsel was ineffective for failing to object to Petitioner's classification as a "career offender." Section 4B1.1(a) of the United States Sentencing Guidelines ("U.S.S.G.") states as follows:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). Petitioner does not contest either the first or second element of the career offender definition. Instead, he argues that he has not had at least two prior felony convictions of either a crime of violence or a controlled substance offense. A review of the Presentence Report ("PSR") though indicates Petitioner is mistaken.

The guidelines define a controlled substance offense as the following:

> The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export,

7

> distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b). The PSR identified both a 2005 and a 2013 controlled substance conviction that § 4B1.1(a) defines as predicate offenses. (*See* PSR ¶¶ 199, 202). The 2005 conviction was for manufacturing, distribution and dispensing a controlled substance. (*See id.* ¶ 199). Petitioner received a sentence of twelve years. (*See id.*) The 2013 conviction was for manufacture, distribution of a controlled substance or intent to manufacture. (*See id.* ¶ 202). Petitioner received a sentence of five years for that conviction in March, 2013. (*See id.*) Thus, it readily appears that Petitioner had the requisite two controlled substance convictions to be classified as a career offender under the guidelines.

Nevertheless, Petitioner cites to § 4A1.2(a)(2) for the proposition that the 2013 conviction should not count as a predicate offense because he was also sentenced on the same date to a longer drug conviction which did not carry criminal history points. (*See* PSR ¶ 203). Paragraph 203 of the PSR details Petitioner's conviction for manufacture, distribution of a controlled substance or intent to manufacture for which Petitioner received a seven-year sentence also in March, 2013.

Section 4A1.2(a)(2) of the guidelines states as follows:

> If the defendant has multiple prior sentences, determine whether those sentences are counted separately or treated as a single sentence. Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day. Treat any prior sentence covered by (A) or (B) as a single sentence.

U.S.S.G. § 4A1.2. Petitioner appears to argue that the conviction in Paragraph 203 should have carried the criminal history points and that neither conviction in Paragraph 202 nor 203 can constitute a predicate offense.

As Respondent correctly states however, and as the application notes to § 4A1.2 make clear, the conviction in Paragraph 202 was correctly determined to be a predicate offense. Indeed, the application notes explain that:

> In some cases, multiple prior sentences are treated as a single sentence for purposes of calculating the criminal history score under § 4A1.1(a), (b), and (c). However, for purposes of determining predicate offenses, a prior sentence included in the single sentence should be treated as if it received criminal history points, if it independently would have received criminal history points. Therefore, an individual prior sentence may serve as a predicate under the career offender guideline (see § 4B1.2(c)) or other guidelines with predicate offenses, if it independently would have received criminal history points. However, because predicate offenses may be used only if they are counted "separately" from each other (see § 4B1.2(c)), no more than one prior sentence in a given single sentence may be used as a predicate offense.

U.S.S.G. § 4A1.2(a)(2) application note 3. Thus, while the convictions in Paragraph 202 and 203 were treated as a single sentence for calculating the criminal history category score, it does not mean that Paragraph 202 could not constitute a predicate offense.[1] Thus, as the convictions in Paragraphs 199 and 202 of the PSR were properly considered predicate offenses, counsel was not ineffective for failing to raise this meritless issue.[2] Thus, Claim II is denied.

---

[1] It is worth noting that Paragraphs 202 and 203 were not individually considered predicate offenses, only Paragraph 202.

[2] Because these two convictions constituted the requisite number of predicate offenses to make Petitioner a career offender under § 4B1.1, this Court need not analyze whether Petitioner's 1991 conviction for aggravated assault also constituted a predicate offense.

C.  <u>Claim III</u>

In Claim III, Petitioner argues that counsel was ineffective for failing to raise a

sentencing issue under U.S.S.G. § 5G1.3. The relevant portions of that guideline provision state

as follows:

> (a) If the instant offense was committed while the defendant was
> serving a term of imprisonment (including work release, furlough,
> or escape status) or after sentencing for, but before commencing
> service of, such term of imprisonment, the sentence for the instant
> offense shall be imposed to run consecutively to the undischarged
> term of imprisonment.
> (b) If subsection (a) does not apply, and a term of imprisonment
> resulted from another offense that is relevant conduct to the instant
> offense of conviction under the provisions of subsections (a)(1),
> (a)(2), or (a)(3) of § 1B1.3 (Relevant Conduct), the sentence for
> the instant offense shall be imposed as follows:
>> (1) the court shall adjust the sentence for any period
>> of imprisonment already served on the undischarged
>> term of imprisonment if the court determines that
>> such period of imprisonment will not be credited to
>> the federal sentence by the Bureau of Prisons; and
>> (2) the sentence for the instant offense shall be
>> imposed to run concurrently to the remainder of the
>> undischarged term of imprisonment.

U.S.S.G. § 5G1.3. Petitioner states at the time of sentencing in his federal criminal matter he had

already been incarcerated for five years on a related state charge. (*See* ECF 1-1 at 9). Thus,

according to Petitioner, had counsel raised this issue at sentencing, Petitioner's sentence would

have been reduced by five years. (*See id.*)

Petitioner does not contest that he entered the plea agreement knowingly and voluntarily.

In the plea agreement, the parties specifically stipulated that Petitioner would receive a sentence

of 144 months, precisely the sentence that Petitioner received. Petitioner further agreed in the

plea agreement that he would not argue for a sentence below the 144-month sentence he

received. (*See* Crim. No. 16-403 ECF 306 at 9). Thus, this Court fails to see how counsel's

performance fell below an objective standard of reasonableness given that Petitioner knowingly and voluntarily agreed to a sentence of 144 months and agreed to not argue for a lower sentence.[3] Accordingly, relief is not warranted on Claim III.

D. Claim IV

In Claim IV, Petitioner asserts that counsel was ineffective for failing to raise a post-accusation dismissal of the indictment due to delay. To determine whether a speedy trial violation has occurred, courts employ a "balancing test, in which the conduct of both the prosecution and the defendant are weighed." *Vermont v. Brillon,* 556 U.S. 81, 90 (2009) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1997)). In *Barker*, the Supreme Court set forth factors courts should consider when determining whether a defendant's right to a speedy trial has been violated. *See Barker*, 407 U.S. at 530. The *Barker* factors are: "(1) the length of the delay; (2) the reason for the delay; (3) the extent to which the defendant asserted his speedy trial right; and (4) the prejudice suffered by the defendant. No one factor is controlling, and any violation depends on the peculiar circumstances of the case." *United States v. Sodano*, 592 F. App'x 114, 115 (3d Cir. 2014) (internal citation omitted) (citing *Barker*, 407 U.S. at 530-31).

Petitioner claims that he told counsel to file a motion for a speedy trial violation and that he requested counsel not accept continuances without his knowledge or consent. Petitioner states that he did not consent to continuances in his criminal case. Furthermore, Petitioner states that counsel told him he had in fact filed a speedy trial motion. Petitioner states that he was prejudiced by the approximate two-and-one-half year delay between the criminal complaint and the indictment because: (1) the government received plea agreements from co-conspirators; (2)

---

[3] It is worth noting that the PSR indicated a guideline sentencing range of 188-235 months, (*see* PSR ¶ 261), or well below the 144-month sentence Petitioner received by this Court as agreed to in the plea agreement by the parties.

the delay affected his state parole hearing; and (3) the delay allowed the government to possess relevant cellphone evidence against Petitioner.

Respondent asserts that this claim is meritless. First, Respondent asserts that the length of time between criminal complaint and indictment (two-and-one-half years)) does not *per se* constitute a speedy trial violation. Second, Respondent claims that the delay was caused by Petitioner's numerous requests for continuances. Third, Respondent cites to Petitioner's former attorney's declaration whereby she states that Petitioner did not advise her to file a speedy trial motion. Respondent also states that Petitioner was not prejudiced because he was already serving his state sentence so he would have been incarcerated no matter what the outcome of the federal case. Finally, Respondent notes that the delay resulted in Petitioner's counsel obtaining a plea agreement for Petitioner that was below the guidelines range he would have faced otherwise.

This Court cannot decide this claim on this record without first conducting an evidentiary hearing. The parties are at odds with respect to what Petitioner told counsel with respect to continuances as well as whether Petitioner told his counsel to file a speedy trial motion. While it is true that Petitioner was present for some early status conferences where he and his counsel consented to continuances, Petitioner was not present at other status conferences. While Petitioner's presence at earlier conferences where continuances were granted may ultimately weigh against Petitioner's credibility, without having the witnesses (Petitioner and his former attorney) actually testify regarding what actually transpired with respect to consent for continuances and the filing of a speedy trial motion, this Court cannot decide this claim on the paper record alone. More specifically, this Court cannot decide this claim on the first prong of *Strickland* given the differing versions from Petitioner and counsel about what took place. Deciding the prejudice prong is also problematic based on this paper record. Indeed, this is

particularly true because no one *Barker* factor is controlling and whether Petitioner consented to continuances could have an impact on whether a speedy trial motion would have been successful. Accordingly, an evidentiary hearing will need to take place. Petitioner will be appointed counsel to represent him at this evidentiary hearing.

E. <u>Claim V</u>

In Claim V, Petitioner claims that counsel was ineffective when she did not object to a three-level enhancement under U.S.S.G. § 3B1.1(b) as an offense involving five or more participants or one that was otherwise extensive.[4] (*See* ECF 1-1 at 15-17). Section 3B1.1(b) increases the offense level by three levels "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(b).

Petitioner's counsel's performance did not fall below an objective standard of reasonableness for objecting to this three-level enhancement. First, Petitioner himself admitted in the plea agreement that the three-level enhancement would apply. Indeed, Petitioner stipulated to the fact that he "occupied an aggravating role in connection with the conspiracy and was a manager or supervisor (but not an organizer or leader) of the criminal activity that involved five or more participants or was otherwise extensive." (Crim. No. 16-403 ECF 306 at 9). Petitioner does not allege that entering into this plea agreement was not knowing or voluntary. Thus, given Petitioner's agreement and stipulation in the plea agreement to the applicable three-level enhancement, counsel was not ineffective for failing to raise this issue after it appeared in the PSR.

---

[4] Petitioner cites to U.S.S.G. § 1B1.1(b), but he is clearly actually referring to U.S.S.G. § 3B1.1(b).

Petitioner also fails to show prejudice. As the PSR indicates, the three-level enhancement raised Petitioner's criminal history category score to 33. (*See* PSR ¶¶ 182, 184). However, as a career offender, his criminal history category score was already placed at 34. (*See id.* ¶ 185). Thus, even if Petitioner's counsel had made an argument that the three-level enhancement should not apply, it would not have affected his criminal history category score which was automatically placed at 34 (or above his score with the enhancement) because Petitioner was a career offender. Accordingly, Petitioner is not entitled to relief on Claim V.

F.   Claim VI

In Claim VI, Petitioner alleges the prosecution against him was a sham. Petitioner asserts this is the case "because the law enforcement officers involved, while employed by Brick Township Police Department and assigned to the Ocean County Strike Force, were acting in their capacity as deputized federal agents." (*See* ECF 5 at 1). While not completely clear, Petitioner appears to argue that this violated the Double Jeopardy Clause because members of the federal investigative team may have also been members of prior and separate state investigations of Petitioner. Petitioner seeks a stay to develop the record on this claim. (*See id.* at 3).

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides: "No person shall ... be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V.

> To assess whether two crimes constitute the "same offense" for double jeopardy purposes, we employ the test established by the Supreme Court in *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932). That is, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.* at 304, 52 S. Ct. 180.

*Wilkerson v. Superintendent Fayette SCI*, 871 F.3d 221, 230 (3d Cir. 2017).

14

Petitioner's March 2013 convictions involve substantive charges of manufacture/distribution of a controlled substance or intent to manufacture. (*See* PSR ¶¶ 202, 203). However, Petitioner pled guilty in his federal criminal case to conspiracy with intent to distribute and possess with intent to distribute heroin in violation of 21 U.S.C. § 846. (*See* Crim. No. 16-403 ECF 312). As the United States Supreme Court has noted, "a substantive crime and a conspiracy to commit that crime are not the 'same offence' for double jeopardy purposes." *United States v. Felix*, 503 U.S. 378, 389 (1992). Thus, Petitioner's state substantive conviction was not the "same offense" as Petitioner's federal conspiracy conviction for purposes of double jeopardy. Therefore, this sham prosecution claim lacks merit.

Nevertheless, even if they were the same offense, the dual sovereignty doctrine of the Double Jeopardy Clause would apply to defeat Petitioner's claim.

> The Supreme Court recently reaffirmed the dual-sovereignty doctrine of the Double Jeopardy Clause. *Gamble v. United States*, – U.S. –, 139 S. Ct. 1960, – L.Ed.2d – (2019). "Under this 'dual-sovereignty' doctrine, a State may prosecute a defendant under state law even if the Federal Government has prosecuted him for the same conduct under a federal statute." *Id.* at 1964. This has long been recognized as a "firmly established principle." *Abbate v. United States*, 359 U.S. 187, 195, 79 S. Ct. 666, 3 L. Ed. 2d 729 (1959).

*United States v. Lawson*, 773 F. App'x 94, 95 (3d Cir. 2019). Petitioner though appears to argue that this Court should apply an exception to the dual sovereignty rule noted in *Bartkus v. Illinois*, 359 U.S. 121, 137 (1959). As one court in this District has explained:

> In *Bartkus,* the Supreme Court found successive state and federal prosecutions constitutionally permissible, but noted that successive prosecutions might run afoul of the general rule if one authority acts as a surrogate for the other, or if the state prosecution serves merely as "a sham and a cover for the federal prosecution." *Id.* at 123, 79 S. Ct. 676. In such a scenario, the *Bartkus* Court opined that a successive prosecution may prove constitutionally impermissible if it renders the earlier state prosecution, in essence, "another federal prosecution," thereby enabling federal authorities

to "avoid[ ] the prohibition of the Fifth Amendment against a retrial of a federal prosecution after an acquittal." *Id.* at 123–24, 79 S. Ct. 676.

Though the Court of Appeals for the Third Circuit has "recognized the potential existence" of a *Bartkus* exception, it has "never applied the exception to overturn a second state or federal prosecution." *Berry,* 164 F.3d at 847, n. 3 (noting that at least one circuit has questioned whether the Supreme Court "even intended to create an exception in *Bartkus*") (citation omitted); *see also Piekarsky,* 687 F.3d at 149 (same).

Consequently, to the extent the *Bartkus* exception narrowly applies in this Circuit, *see U.S. v. Atl. States Cast Iron Pipe Co.,* No. 03–852, 2005 WL 2138701, at *4 (D.N.J. Aug. 31, 2005), it is limited to situations in which one sovereign so thoroughly dominates or manipulates the prosecutorial machinery of another that the latter retains little or no volition. *See U.S. v. Dowdell,* 595 F.3d 50, 63 (1st Cir. 2010) (internal citations and quotation marks omitted); *U.S. v. Guzman,* 85 F.3d 823, 827 (1st Cir.1996). In that regard, the "essential element of the *Bartkus* exception is a high level of control: one sovereign must (1) have the ability to control the prosecution of the other and (2) it must exert this control to essentially manipulate[ ] another sovereign into prosecuting." *U.S. v. Moore,* 370 F. App'x 559, 561 (5th Cir.2010) (citations and internal quotation marks omitted).

. . . .

Cooperation, however, even "very close coordination," fails to "amount [ ] to one government being the other's 'tool' or providing a 'sham' or 'cover.'" *U.S. v. Figueroa–Soto,* 938 F.2d 1015, 1020 (9th Cir.1991) (citation omitted). Indeed, "cooperation between federal and state authorities in criminal law enforcement is to be desired and encouraged," *Bartkus,* 359 U.S. at 169, 79 S. Ct. 676, and does not alone "furnish a legally adequate basis for invoking the *Bartkus* exception." *Dowdell,* 595 F.3d at 63; *see also U.S. v. Djoumessi,* 538 F.3d 547, 550 (6th Cir.2008) (noting that "everyday" cooperation "does not establish that the federal government has ceded its prosecutorial discretion and other law-enforcement powers to a State"); *U.S. v. Zone,* 403 F.3d 1101, 1105 (9th Cir.2005) (noting that collaboration between state and federal authorities "fails to state a colorable double jeopardy claim").

*United States v. Perry*, 79 F. Supp. 3d 524, 529–30, 531 (D.N.J. 2015).

In this case, all Petitioner has stated is cooperation between law enforcement, not that one prosecution constituted a sham of the other by controlling the prosecution itself. Thus, even if the *Bartkus* exception were applicable, Petitioner fails to show that it would warrant a finding that he is entitled to relief on this claim. Accordingly, for the reasons outlined above, this Court rejects Petitioner's claim for a stay so he can conduct discovery on this claim. Claim VI is denied.

G.  Motion to Amend

In September, 2019, Petitioner filed a motion to amend seeking to add a seventh claim to this action. More specifically, Petitioner claims counsel was ineffective in failing to object when the government purportedly improperly relied on two separate drug transactions to establish the drug quantity involved with the conspiracy charge in the indictment (100 grams) (hereinafter the "drug quantity claim"). For the following reasons, Petitioner's motion to amend will be denied because the drug quantity claim is time-barred. Furthermore, even if the drug quantity claim is not time-barred, it lacks merit such that the motion to amend is futile.

Section § 2255(f) includes a one-year period in which a petitioner may file a request for relief, which runs form the latest of four specified events:

> (1) the date on which the judgment of conviction becomes final;
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence[.]

28 U.S.C. § 2255(f). Because Petitioner does not contend that new facts have been recently discovered which would support his petition, nor to a new right recognized by the *Supreme*

*Court* made retroactively applicable nor that the government impeded Petitioner, this Court will only examine § 2255(f)(1) as to whether his drug quantity claim is time-barred.

Petitioner did not file a direct appeal in this case. When a petitioner does not file a direct appeal, his judgment becomes final when the time to file that appeal has run. *See Kapral v. United States*, 166 F.3d 565, 577 (3d Cir. 1999). Petitioner had fourteen days in which to file his notice of appeal. *See* Fed. R. App. P. 4(b)(1)(A). Thus, Petitioner's judgment became final on December 21, 2017, or fourteen days after this Court entered judgment on December 7, 2017. Thus, Petitioner had until December 7, 2018 in which to file his § 2255 claims.

Petitioner's original § 2255 motion filed in November, 2018 was timely as was his letter received by this Court on November 29, 2018 and his § 2255 motion received on December 18 2018. (*See* ECF 1, 5 & 7). This Court did not receive Petitioner's motion to amend seeking to add the drug quantity claim until September, 2019, clearly beyond the applicable one-year statute of limitations. Nevertheless, if the drug quantity claim relates back to Petitioner's claims raised in his documents filed with this Court prior to the expiration of the one-year statute of limitations, the drug quantity claim will be considered timely.

> Pursuant to [Federal] Rule [of Civil Procedure] 15(c), an amendment that is otherwise untimely "relates back to the date of the original pleading when ... the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). The Supreme Court has cautioned that courts should not interpret "conduct, transaction, or occurrence" in such a broad manner so as to construe essentially all amendments as permissible under the relation-back doctrine. *See Mayle v. Felix*, 545 U.S. 644, 656–57, 125 S. Ct. 2562, 162 L. Ed. 2d 582 (2005). For example, in the habeas context, the Supreme Court has refused to interpret "conduct, transaction, or occurrence" as broadly encompassing a "habeas petitioner's trial, conviction, or sentence," reasoning that "[u]nder that comprehensive definition, virtually any new claim introduced in an amended petition will relate back, for federal habeas claims, by their very nature, challenge the

> constitutionality of a conviction or sentence, and commonly attack proceedings anterior thereto." *Id.* Instead, it has counseled that an amendment relates back to a habeas petition under Rule 15(c) "[s]o long as the original and amended petitions state claims that are tied to a *common core of operative facts.*" *Id.* at 664, 125 S. Ct. 2562 (emphasis added).
>
> In "search[ing] for a common core of operative facts in the two pleadings," *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir. 2004), courts should remain aware that "the touchstone for relation back is fair notice, because Rule 15(c) is premised on the theory that 'a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide,'" *Glover v. FDIC*, 698 F.3d 139, 146 (3d Cir. 2012). "Thus, only where the opposing party is given 'fair notice of the general fact situation and the legal theory upon which the amending party proceeds' will relation back be allowed." *Glover*, 698 F.3d at 146 (quoting *Bensel*, 387 F.3d at 310). For example, we have held that "amendments that restate the original claim with greater particularity or amplify the factual circumstances surrounding the pertinent conduct, transaction[,] or occurrence in the preceding pleading fall within Rule 15(c)" because the opposing party will have had sufficient notice of the circumstances surrounding the allegations contained in the amendment. *Bensel*, 387 F.3d at 310.

*United States v. Santarelli*, 929 F.3d 95, 101 (3d Cir. 2019).

The drug quantity claim does not relate back to any of the six claims previously analyzed that Petitioner timely raised. It is not of the same time and type of any of those six claims. The drug quantity claim is simply not tied to the same common core of operative facts as any of those six claims. Accordingly, the drug quantity claim is untimely.

Nevertheless, even if the drug quantity claim were considered timely, it would still be denied as it lacks merit. While not specifically cited by Petitioner, Petitioner appears to rest his drug quantity claim on the Third Circuit decision in *United States v. Rowe*, 919 F.3d 752 (3d Cir. 2019). As aptly explained by another court in this Circuit with respect to *Rowe*:

> In that case, defendant Rowe was charged with one count of distribution and possession with intent to distribute 1,000 grams of

19

> heroin during an approximately four-month time frame. The jury convicted Rowe of that charge based on evidence of several drug transactions and instances of possession. *See id.* at 756 ("The Government's theory throughout the trial was that because Rowe distributed or possessed with intent to distribute a total of 1000 grams or more of heroin during the indictment period, a 1000-gram verdict was justified.") *Id.* The Third Circuit concluded that the Government's evidence was insufficient to meet 21 U.S.C § 841's quantity threshold because separate distributions during the indictment period cannot be aggregated to meet the threshold. *Id.* at 760. The Court determined that although possession with intent to distribute is a continuing offense, for quantity purposes, the offense begins when the defendant possesses *the entire quantity*, and ends when possession of the entire quantity ends or when the quantity possessed is reduced to less than the threshold. *Id.*

*United States v. Perrin*, No. 2:14-CR-205-2, 2019 WL 3997418, at *3 (W.D. Pa. Aug. 23, 2019).

As the Western District of Pennsylvania in *Perrin* noted, *Rowe* did not involve a conspiracy charge. *See id.* Furthermore, '[b]ecause the drug quantity for conspiracy is an offense-specific determination of the quantity involved in the entire conspiracy, those drugs need not be possessed by any one conspirator at one specific time." *See id.*

As *Perrin* makes clear, Petitioner is mistaken on his underlying premise that adding up the drug quantities of separate transactions to support his claim of conspiracy was improper. This is because Petitioner was charged with conspiracy as opposed to a substantive possession with intent to distribute charge. Accordingly, Petitioner's counsel cannot be deemed ineffective for failing to object where the underlying objection would have lacked merit. *See United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument."). Thus, even if Petitioner's drug quantity claim was timely, it would still fail on the merits. Therefore, the motion to amend is denied as futile as the claim raised therein is both untimely and lacks merit.

## V.       CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2255. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In *Slack v. McDaniel,* 529 U.S. 473, 484 (2000), the United States Supreme Court held: "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

Petitioner has not met the standard for a COA on Claims I, II, III, V and VI as well as his drug quantity claim raised in his motion to amend. This Court reserves judgment on whether a COA should issue on Claim IV.

VI.    CONCLUSION

For the foregoing reasons, Claims I, II, III, V and VI are denied as is Petitioner's motion to amend. A COA shall not issue on these claims or on the claim raised in the motion to amend. This Court will conduct an evidentiary hearing on Claim IV. Counsel will be appointed to represent Petitioner at the evidentiary hearing on Claim IV. An appropriate order will be entered.


                                                    *s/Peter G. Sheridan*
                                                    PETER G. SHERIDAN, U.S.D.J.

June 16, 2020