UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ROBERT BRITT, :
:
        Petitioner, :    Civ. No. 18-16357 (PGS)
:
v. :
:
UNITED STATES, :    **OPINION**
:
        Respondent. :
:

**PETER G. SHERIDAN, U.S.D.J.**

    **I.    INTRODUCTION**

    Petitioner, Robert Britt ("Petitioner" or "Britt"), is a federal prisoner proceeding with a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. On June 16, 2020, this Court denied most of Petitioner's claims. (*See* ECF 25 & 26). However, this Court ordered an evidentiary hearing on Petitioner's claim that counsel was ineffective for failing to raise a post-accusation dismissal of the indictment due to delay. That evidentiary hearing has now concluded. For the following reasons, this Court denies the sole remaining claim in Petitioner's § 2255 motion.

    **II.    FACTUAL AND PROCEDURAL BACKGROUND**

    Petitioner, along with several other individuals, was charged in a criminal complaint on March 26, 2014, with conspiracy with the intent to distribute one hundred grams or more of heroin. (*See* Crim. No. 16-403-1 ECF 1). At that time, Petitioner was serving a state criminal sentence.

    Petitioner's initial appearance before Magistrate Judge Bongiovanni occurred on August 6, 2014. Ms. Alyssa Cimino, Esq. was appointed to represent Petitioner. (*See id.* ECF 172 &

174). At that hearing, Petitioner waived his right under the Interstate Agreement on Detainers Act ("IADA") to remain in federal custody so that he could be returned to state custody. (*See id.* ECF 176). Indeed, the following colloquy took place between Magistrate Judge Bongiovanni and Petitioner at that hearing:

> THE COURT:  Do you understand, Mr. Britt? Just very simply, the Interstate Agreement on Detainer has certain requirements, and it's for the benefit of anyone who is arrested so you're not languishing somewhere. And under the agreement, you are supposed to be brought to trial within 120 days, five months, right. I have to do math on my hands. [¶] In certain circumstances, that might not be something you want to do, and it's my understanding that that's not something you want to do. You don't want to force the Government to take you to trial within five months, and you're willing to talk to Ms. Cimino, see what your options are.
> [BRITT]: Yes.
> THE COURT: And you're not going to be able to then come back and say, well, wait a minute, I waived that right, but you didn't bring me back to court – you know, you didn't bring me to trial within five months, so now you need to dismiss the complaint. Do you understand that?
> [BRITT]: I understand, yes, ma'am.

(*See id.* ECF 332 at 10-11).

On October 1, 2014, the government sent Ms. Cimino a formal plea offer. (*See* Gov't Ex. 5, June 10, 2021 Evid. Hr'g). The offer placed Petitioner at a Guideline Offense level of 35 with a criminal history category score of VI and labeled him as a career offender. *See* U.S.S.G. § 4B1.1(b) (noting a career offender is placed at criminal history category VI). This offer would have placed Petitioner at a sentencing guideline range of 292 to 365 months imprisonment. Ms. Cimino stated she viewed this first plea offer as a "non-starter" given that sentencing exposure. (*See* Evid. Hr'g Tr. at 35-36, June 10, 2021, ECF 38).

On October 20, 2014, the parties again appeared before Magistrate Judge Bongiovanni for a status conference. Britt was present at this in-person conference. (*See* Crim. No. 16-403-1,

ECF 333 at 2). Petitioner agreed to another continuance as well as to allow Ms. Cimino to appear on his behalf at future continuance hearings. (*See id.* at 5). The following colloquy occurred at that hearing:

> THE COURT: So if, Mr. Britt, your attorney wishes to come, and make an appearance in front of me without you being here for this limited purpose, to talk about your waiving your Speedy Trial Right Act rights . . . or – and/or agreeing that you're entering into another waiver of your rights under the Interstate Agreement, that would be acceptable to you, do you understand?
> [BRITT]: Yes.

(*See id.* at 6).

Several other continuance hearings/orders occurred/were entered over the next several months as follows:

1. January 8, 2015 (*See* Crim. No. 16-403-1, ECF 334).
2. March 31, 2015 (*See id.* ECF 250, 253).
3. June 3, 2015 (*See id.* ECF 255, 256).
4. July 29, 2015. (*See id.* ECF 265).

On August 18, 2015, another status conference occurred before Magistrate Judge Bongiovanni. Petitioner was present at this status conference. (*See id.* ECF 335 at 2). Magistrate Judge Bongiovanni obtained permission directly from Britt to continue this matter as follows:

> THE COURT: Okay. And likewise for you, Mr. Britt. I know we have been through this before, but just to recap because you're in state custody but you have a Federal charge pending against you, just signing the Speedy Trial Act continuance isn't good enough. The rules require that under the Interstate Agreement on Detainer that we get to have a face-to-face so that I can make sure that it's still your desire to hold off having the matter indicted essentially, and that you are willing to continue the case so that you, your attorney, and the U.S. Attorney can discuss about your options, and go over your options. [¶] But essentially that you understand that you would have the right to push forward with the Federal criminal case, but it's your decision, after consulting with Ms. Cimino, that you want to enter into another continuance to allow your discussions to be ongoing, is that right?
> [BRITT]: Yes.

3

(*See id.* ECF 335 at 2-3). Further orders to continue were entered in October and November, 2015. (*See id.* ECF 272, 274).

In October, 2015, Ms. Cimino received a second plea offer from the government. (*See* Gov't Ex. 8 June 10, 2021 Evid. Hr'g). The second plea offer included a proposed stipulated sentence of 150 to 168 months imprisonment. (*See id.* at 2). Ms. Cimino went over the offer with Petitioner on January 7, 2016. (*See* ECF 38 at 52). Petitioner signed the plea agreement. (*See id.*)

On February 1, 2016, Magistrate Judge Bongiovanni signed another continuance order. (*See* Crim. No. 16-403-1 ECF 275). That order noted that the parties had entered into a written plea agreement. (*See id.*) On February 10, 2016, the parties appeared before Magistrate Judge Clark. They sought and received another order to continue. (*See id.* ECF 278). That order again specifically noted that the parties had entered into a written plea agreement. (*See id.*).

A plea hearing was scheduled for March 9, 2016. However, that plea hearing was adjourned. Petitioner wanted more time to discuss the plea with his family. (*See* ECF 38 at 55). Accordingly, rather than a plea hearing, a continuance hearing took place. (*See* Crim. No. 16-403-1 ECF 280). Magistrate Judge Bongiovanni issued another continuance order at that time. (*See id.* ECF 281).

Another in-person hearing took place on June 3, 2016 before Magistrate Judge Mannion. (*See id.* ECF 283). Magistrate Judge Mannion entered a continuance order that same day. (*See id.* ECF 284). That continuance order noted that a plea hearing was scheduled June 16, 2016. (*See id.*). However, the plea hearing did not take place as Petitioner decided not to move forward with the plea agreement he had signed in January 2016. (*See* ECF 38 at 58). In July, 2016, the government indicated to Ms. Cimino that it now intended to indict Petitioner. (*See id.*).

4

On August 1, 2016, Magistrate Judge Bongiovanni conducted another in-person status conference. (*See* Crim. No. 16-403-1 ECF 337). Petitioner was present. (*See id.* at 2). The following colloquy took place between Magistrate Judge Bongiovanni and Petitioner at that status conference:

> THE COURT: Mr. Britt, as I mentioned a moment ago, I wouldn't be dragging you in here to talk about the Speedy Trial Act, but because we're also talking about someone who – the Interstate Agreement on Detainers, and to put it as simply as I can, I think it was created because there are people who are in custody in State Court, and there's activity in Federal Court, and we want to make sure that you don't get released from State Prison, or find out somewhere down the road, wait a minute, there was something going on that I should have been aware of, should have been addressing. Because at the end of the day, the time that you're serving now is not likely to apply here. So if you're convicted or you plead guilty here and you're sentenced, all the time that you're sitting there, under the – in the old days, it would – it could cover. You know, it would be applied here, it could be viewed as the word, you know, consecutive, concurrent. Concurrent is not likely anymore. [¶] So a little more longwinded than I had meant to say, but essentially we're bringing you in here so that you understand that you've clearly got this Federal case going on, and you have the right to say to the Government bring me to trial now, give me my day in court. But by agreeing to this, an extra continuance, you understand that it's in your best interest, having discussed this with Ms. Cimino, to take some time and consider your options. But the time that you're taking can't then be used to say to the Government you did something wrong here. So understand that?
> [BRITT]: Yes.

(*See id.* at 6-7). Magistrate Judge Bongiovanni then entered another continuance order. (*See id.* ECF 287).

On September 8, 2016, a grand jury indicted Petitioner charging him with conspiracy to distribute and to possess with intent to distribute 100 grams or more of heroin in Monmouth and Ocean Counties from 2010 to March, 2014. (*See id.* ECF 288). On September 23, 2016, Magistrate Judge Falk conducted an in-person continuance hearing with Ms. Cimino and the

government (Petitioner was not present). (*See id.* ECF 294) Magistrate Judge Falk then entered another continuance order. (*See id.* ECF 295).

On September 27, 2016, Petitioner was arraigned. At the arraignment, the government noted that just days earlier, Magistrate Judge Falk had entered a continuance pursuant to the Speedy Trial Act and the IADA. (*See* Crim. No. 16-403-1, ECF 346 at 5).

On January 3, 2017, counsel for the parties along with Petitioner appeared before this Court for a status conference. (*See* Crim. No. 16-403-1 ECF 349). The parties requested a continuance to be able to continue discovery. (*See id.* at 4-5). Petitioner agreed on the record to this continuance. (*See id.* at 5). This Court then subsequently entered another continuance order. (*See id.* ECF 297).

Another in-person status conference occurred on May 22, 2017. (*See id.* ECF 303). Once again, Brit was present. (*See id.* at 2). At that hearing, Ms. Cimino explained she could not likely try Petitioner's case until the spring of 2018 based on her schedule. Ms. Cimino then engaged in the following colloquy on the record with Petitioner:

> THE COURT: So, have you discussed [Ms. Cimino's schedule] with your client?
> MS. CIMINO: I have, your Honor. I have discussed this, he's fully aware of it. And if your Honor prefers to hear from him whether he has any objection to the schedule, I will allow him to indicate to your Honor if he has any objections to that schedule. [¶] Mr. Britt, you've just heard me explain my schedule, for the next – at least through March 2018; is that right?
> [BRITT]: Yes.
> MS. CIMINO: You also heard me express to the judge that I may not have a good sense of when we can get to your case until August, after the motions are heard in that case; is that right?
> [BRITT]: Yes.
> MS. CIMINO: Do you have any objection or problem if this case is not heard on trial schedule, assuming the Court's calendar, until next June, which is June 2018, which is – or July, which is a year from now.
> [BRITT]: Yes.
> MS. CIMINO: The question is do you have any objections.

6

> [BRITT]: Oh, no.
> MS. CIMINO: Can you make sure you say it loudly enough?
> THE COURT: I heard.
> [BRITT]: No.
> MS. CIMINO: Thanks.

(*See id.* ECF 350 at 5-6). Mr. Britt then also agreed on the record to another continuance and this Court entered a continuance. (*See id.* at 10-11; *see also id.* ECF 302).

On June 16, 2017, the government sent Ms. Cimino a third plea offer. (*See* Gov't Ex. 17 June 10, 2021 Evid. Hr'g). This plea offer included a 144-month recommended sentence. (*See id.* at 2). Petitioner agreed to this plea on June 22, 2017. (*See* Crim. No. 16-403-1 ECF 306 at 8). This Court accepted Petitioner's guilty plea on July 10, 2017. (*See id.* ECF 307). On December 7, 2017, Petitioner was sentenced to 144 months imprisonment. (*See id.* ECF 312). Petitioner did not file an appeal.

In November, 2018, Petitioner filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. (*See* ECF 1). Petitioner raised the following claims in his § 2255 motion:

1. Ineffective assistance of counsel for failing to assert that the Interstate Agreement on Detainers Act ("IADA") Anti-Shuttling Provision ("Claim I")
2. Ineffective assistance of counsel for failing to object to Petitioner's career offender designation ("Claim II")
3. Ineffective assistance of counsel for failing to raise a § 5G1.3 sentencing issue ("Claim III")
4. Ineffective assistance of counsel for failing to raise a post-accusation delay dismissal of indictment ("Claim IV")
5. Ineffective assistance of counsel for failing to object to a three-level sentencing enhancement ("Claim V")
6. Sham prosecution ("Claim VI")

On June 16, 2020, this Court denied all of Petitioner's claims except for Claim IV. *See Britt v. United States*, No. 18-16357, 2020 WL 3249118 (D.N.J. June 16, 2020). This Court determined that an evidentiary hearing was necessary on Claim IV, explaining as follows:

Petitioner claims that he told counsel to file a motion for a speedy trial violation and that he requested counsel not accept continuances without his knowledge or consent. Petitioner states that he did not consent to continuances in his criminal case. Furthermore, Petitioner states that counsel told him [s]he had in fact filed a speedy trial motion. Petitioner states that he was prejudiced by the approximate two-and-one-half year delay between the criminal complaint and the indictment because: (1) the government received plea agreements from co-conspirators; (2) the delay affected his state parole hearing; and (3) the delay allowed the government to possess relevant cellphone evidence against Petitioner.

Respondent asserts that this claim is meritless. First, Respondent asserts that the length of time between criminal complaint and indictment (two-and-one-half years)) does not *per se* constitute a speedy trial violation. Second, Respondent claims that the delay was caused by Petitioner's numerous requests for continuances. Third, Respondent cites to Petitioner's former attorney's declaration whereby she states that Petitioner did not advise her to file a speedy trial motion. Respondent also states that Petitioner was not prejudiced because he was already serving his state sentence so he would have been incarcerated no matter what the outcome of the federal case. Finally, Respondent notes that the delay resulted in Petitioner's counsel obtaining a plea agreement for Petitioner that was below the guidelines range he would have faced otherwise.

This Court cannot decide this claim on this record without first conducting an evidentiary hearing. The parties are at odds with respect to what Petitioner told counsel with respect to continuances as well as whether Petitioner told his counsel to file a speedy trial motion. While it is true that Petitioner was present for some early status conferences where he and his counsel consented to continuances, Petitioner was not present at other status conferences. While Petitioner's presence at earlier conferences where continuances were granted may ultimately weigh against Petitioner's credibility, without having the witnesses (Petitioner and his former attorney) actually testify regarding what actually transpired with respect to consent for continuances and the filing of a speedy trial motion, this Court cannot decide this claim on the paper record alone. More specifically, this Court cannot decide this claim on the first prong of *Strickland* given the differing versions from Petitioner and counsel about what took place. Deciding the prejudice prong is also problematic based on this paper record. Indeed, this is particularly true because no one *Barker* factor is

> controlling and whether Petitioner consented to continuances could have an impact on whether a speedy trial motion would have been successful. Accordingly, an evidentiary hearing will need to take place.

*Britt*, 2020 WL 3249118, at \*6–7. Mark W. Cantazaro, Esq. was then appointed to represent Petitioner at the evidentiary hearing.[1]

In June, 2021, two witnesses testified at the evidentiary hearing, Ms. Cimino and Petitioner. This Court can now rule on whether Petitioner's former counsel, Ms. Cimino, was ineffective for failing to raise a post-accusation dismissal motion due to the government's delay. She was not.

### III.   LEGAL STANDARD

Petitioner claims Ms. Cimino failed to file a post-accusation motion for dismissal of his criminal action due to delay. The Sixth Amendment guarantees effective assistance of counsel. In *Strickland v. Washington,* 466 U.S. 668 (1984), the Supreme Court articulated the two-prong test for demonstrating when counsel is deemed ineffective. First, the petitioner must show that considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *See id.* at 688; *see also Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013) (noting that it is necessary to analyze an ineffectiveness claim considering all circumstances) (citation omitted). A petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. *See Strickland*, 466 U.S. at 690. Under this first prong of the *Strickland* test, scrutiny of counsel's conduct must be "highly deferential." *See id.* at 689. Indeed, "[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The reviewing court must make every effort to "eliminate the distorting effects of hindsight, to

---

[1] This Court thanks Mr. Cantazaro for his advocacy on behalf of Petitioner.

reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. If counsel makes "a thorough investigation of law and facts" about his plausible options, the strategic choices he makes accordingly are "virtually unchallengeable." *Gov't of Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1432 (3d Cir. 2006) (citing *Strickland*, 466 U.S. at 690-91). If, on the other hand, counsel pursues a certain strategy after a less than complete investigation, his choices are considered reasonable "to the extent that reasonable professional judgments support the limitations on investigation." *Rolan v. Vaughn*, 445 F.3d 671, 682 (3d Cir. 2006) (citing *Strickland*, 466 U.S. at 690-91).

The second prong of the *Strickland* test requires the petitioner to affirmatively prove prejudice. *See* 466 U.S at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*; *see also McBridge v. Superintendent, SCI Houtzdale*, 687 F.3d 92, 102 n.11 (3d Cir. 2012). "This does not require that counsel's actions more likely than not altered the outcome, but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011) (internal quotation marks and citations omitted).

"With respect to the sequence of the two prongs, the *Strickland* Court held that 'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies…. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice... that course should be

followed.'" *Rainey v. Varner*, 603 F.3d 189, 201 (3d Cir. 2010) (quoting *Strickland*, 466 U.S. at 697).

As explained in more depth *infra*, the parties are at odds as to what transpired regarding Petitioner's agreement to continue his criminal case and whether Petitioner told Ms. Cimino to file a motion to dismiss due to the delay. Accordingly, this Court must weigh Petitioner and Ms. Cimino's credibility. In assessing witness credibility, this Court is guided by several factors such as:

> (1) The opportunity and ability of the witness to see or hear or know the things about which the witness testifies;
> (2) The quality of the witness knowledge and understanding, and memory;
> (3) The witness appearance, behavior, and manner while testifying;
> (4) Whether the witness has an interest in the outcome of the case or any motive, bias, or prejudice;
> (5) Any relation the witness may have with a party in the case and any effect that the [outcome] may have on the witness;
> (6) Whether the witness said or wrote anything before [his testimony] that is different from the witness testimony in court;
> (7) Whether the witness testimony is consistent or inconsistent with other [believable] evidence ... and
> (8) Any other factors that bear on whether the witness should be believed. Inconsistencies or discrepancies in a witness testimony or between the testimony of difference witnesses may or may not cause [one] to disbelieve that witness testimony.

Third Circuit Model Crim. Jury Instructions § 1:10.

## IV. DISCUSSION

Ms. Cimino cannot be deemed ineffective if any post-accusation motion for dismissal would have been meritless. *See Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000) ("[C]ounsel cannot be deemed ineffective for failing to raise a meritless claim.") (citation omitted). To determine whether a speedy trial violation may have occurred, courts employ a "balancing test, in which the conduct of both the prosecution and the defendant are weighed." *Vermont v. Brillon,*

556 U.S. 81, 90 (2009) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1997)). Both parties rely on the factors outlined by the Supreme Court in *Barker* in assessing whether any potential speedy trial motion would have been successful if brought by Ms. Cimino. (*See* ECF 47-1 at 5; ECF 48 at 19). The *Barker* factors this Court considers are: "(1) the length of the delay; (2) the reason for the delay; (3) the extent to which the defendant asserted his speedy trial right; and (4) the prejudice suffered by the defendant. No one factor is controlling, and any violation depends on the peculiar circumstances of the case." *United States v. Sodano*, 592 F. App'x 114, 115 (3d Cir. 2014) (internal citation omitted) (citing *Barker*, 407 U.S. at 530-31). Thus, it is important for this Court to analyze these factors in determining any potential ineffectiveness by Ms. Cimino.

  A. <u>Length of the Delay</u>

Petitioner initially appeared in federal court in August 2014. He did not plead guilty until almost three years later, in July, 2017. The almost three-year delay, while in and of itself is not dispositive, is enough to trigger the analysis of the remaining *Barker* factors. *See, e.g.*, *Kushner v. Attorney General of New Jersey*, No. 14-3709, 2017 WL 2999023, at *5 (D.N.J. July 14, 2017) (citing *Doggett v. United States*, 505 U.S. 647, 652 (1992) (other citation omitted) (noting one year is typically the minimum threshold to warrant triggering a *Barker* analysis).

  B. <u>Reason for the Delay</u>

The next factor this Court must consider is the reason(s) for the almost three-year delay between Petitioner's initial appearance and his subsequent guilty plea. The testimony from Petitioner and Ms. Cimino differs greatly as it relates to this factor. Thus, it is necessary to recount the testimony of each witness and to determine their credibility. For the following reasons, Petitioner is not credible as it relates to this factor while this Court finds Ms. Cimino is credible.

   i. Petitioner's Testimony

Petitioner had a state criminal record but had never been in the federal criminal system prior to his underlying federal criminal case. (*See* ECF 42 at 4). Petitioner asserts Ms. Cimino never explained the Speedy Trial Act nor did she explain the IADA. (*See id.* at 7, 10).

Petitioner admits though as he must that this Court talked to him about the Speedy Trial Act and the IADA. However, Petitioner indicates he did not understand what the Court was telling him because he had never been in the federal criminal system before. (*See id.* at 7-8). Plaintiff states he consented to continuances because he did not understand that if he did not waive the timing rights under the Speedy Trial Act and the IADA, and the government did not bring him to trial within a certain time, the federal criminal charges could be dismissed. (*See id.* at 8).

Petitioner further testified that he was not aware Ms. Cimino was appearing in court without his presence on his behalf to obtain continuances. (*See id.* at 10). Plaintiff indicated he sent a letter to the Court in October, 2016 stating that he did not consent to continuances. (*See id.* at 11). According to Petitioner though, Ms. Cimino scared him enough to withdraw this letter or else he risked going to prison for the rest of his life. (*See id.* at 11-12).

Petitioner further testified he never told Ms. Cimino that no matter how long it would take, he simply wanted to get the best deal from the government. (*See id.* at 14). Petitioner stated instead that he asked Ms. Cimino to file a motion to get his case moving which she told him she did. (*See id.*) According to Petitioner, had he known then what he knew now, he would have never agreed to continuances of his federal criminal case. (*See id.* at 15-16).

During cross examination, Petitioner explained that he never wanted a plea. (*See id.* at 23). Nevertheless, Petitioner was questioned about a June 4, 2015 letter he sent to Ms. Cimino in which he indicated he wanted her to negotiate a plea deal with the government. (*See* Gov't Ex. 21, June 30, 2021 Evid. Hr'g). Petitioner then admitted he was asking Ms. Cimino to negotiate a plea deal on his behalf. (*See* ECF 42 at 28).

Petitioner was then questioned about a subsequent letter he sent to Ms. Cimino dated March 16, 2016. In this letter, Petitioner included an affidavit from Rufus Young and argued that Young's affidavit should help reduce the number of years in any subsequent plea deal. (*See id.* at 150-51; *see also* Gov't Ex. 19 at 2, June 30, 2021 Evid. Hr'g). That letter further stated that Petitioner wanted to wait. (*See id.*)

Petitioner was then questioned on cross about his in-person court appearances where continuances were granted. More specifically, Petitioner was questioned about the October 20, 2014 conference before Magistrate Judge Bongiovanni. He stated that Ms. Cimino was lying in open court when she said that she had discussed the continuance with Petitioner and that he had no objection. (*See* ECF 42 at 33).

According to Petitioner, he testified that the only thing he understood about the IADA was that if he did not agree to the continuances, he would be placed in federal custody. (*See id.* at 158). He claims he did not understand the timing mechanisms at play as well with respect to the IADA and the Speedy Trial Act. (*See id.*).

    ii.       Ms. Cimino's Testimony

Ms. Cimino also testified at the evidentiary hearing. She graduated law school in 2004. (*See* ECF 38 at 15). Approximately seventy-five percent of her practice is dedicated to federal criminal work in the District of New Jersey. (*See id.* at 15-16). According to her, Petitioner was

always in favor of negotiating a plea agreement with the government as that was in his best interest. (*See id.* at 23). She stated she agreed to continuance orders of the Speedy Trial Act and the IADA at the direction of Petitioner to help plea negotiations with the government. (*See id.* at 28). Furthermore, she expressly testified that Petitioner never instructed her to not consent to a continuance order or to discontinue plea negotiations. (*See id.* at 29, 49). Ms. Cimino further explained that Petitioner never directed that a speedy trial motion be filed or that she had told him that such a motion had been filed. (*See id*.; *see also id.* at 65-66; 77). Indeed, she testified that Petitioner was always aware that she was having ongoing plea discussions with the government. (*See id.* at 39).

At one point though Ms. Cimino admits Petitioner did complain that it was taking too long for the government to give him a good plea deal. (*See id.* at 49). However, Ms. Cimino then testified she discussed the impact of moving forward differently if they did not agree to continuances; namely that there would be a rush to indictment and a chance that any plea offer from the government would then be worse. (*See id.* at 50). Thus, Petitioner acquiesced to the continuances.

Ms. Cimino then testified about the adjournment of the March 1, 2016 plea hearing. She noted Petitioner wanted more time to discuss it with his family. (*See id.* at 55).

After the government indicted Petitioner in September, 2016, Ms. Cimino testified that she continued to communicate to Petitioner that pleading guilty remained in his best interest. (*See id.* at 65). It was always Petitioner's general marching orders to Ms. Cimino to get the best deal possible according to her testimony. (*See id.*; *see also id.* at 75-76).

During cross-examination, Petitioner's counsel questioned Ms. Cimino. It appears as of 2014, or when she began representing Petitioner, that she had handled seven or eight federal

15

criminal cases. (*See id.* at 85). She further testified on cross that she told Petitioner about the Speedy Trial Act and the IADA and that if there was a violation of either, one could file a motion to dismiss. (*See id.* at 88). However, Ms. Cimino noted when asked during cross admitted that while she researched the IADA, her billing documents did not indicate that she had researched the IADA. (*See id.* at 89). She testified though she told Petitioner that the IADA was different than a regular continuance order in that it needed to be done in open court. (*See id.* at 90-91).

  iii. Analysis

Given the varying testimony from the two witnesses, this Court must analyze their credibility. Ultimately, Petitioner is not credible.

Petitioner testified that he was not aware of either the Speedy Trial Act or the IADA. Furthermore, he testified that he was not aware Ms. Cimino would appear on his behalf at continuance hearings where he was not physically present. He further explains that Ms. Cimino lied to this Court when she explained in open court with him present that he had no objections to continuances. He later told this Court during the evidentiary hearing that he never wanted to enter a plea in this case.

Petitioner's testimony at the evidentiary hearing is directly contradicted by Petitioner's numerous previous statements and concurrences. Indeed, as this Court outlined in *supra* Part II, Petitioner consented on the record to several continuances in his federal criminal case. This includes numerous hearings where Petitioner was specifically questioned by either a Magistrate Judge or the undersigned. These in-person hearings and colloquies with Petitioner present occurred throughout this case on the following dates:

1. August 6, 2014
2. October 20, 2014
3. August 18, 2015
4. August 1, 2016

5. January 3, 2017
6. May 22, 2017

Plaintiff's testimony during the evidentiary hearing that he did not understand his case could be dismissed is belied by the record. Indeed, during the August 6, 2014 hearing before Magistrate Judge Bongiovanni, Petitioner expressly indicated that he understood this. Furthermore, Petitioner's statement at the evidentiary hearing that he did not know Ms. Cimino would appear on his behalf at future hearings is also belied by the record. Petitioner expressly indicated and approved this arrangement to Magistrate Judge Bongiovanni at the October 20, 2014 hearing.

Petitioner's testimony at the evidentiary hearing is also contradictory to the evidence in this case in other respects. For example, Petitioner testified that he never wanted a plea deal. However, Petitioner signed not one, but two plea agreements. Furthermore, contemporaneous letters, rather than Petitioner's after-the-fact testimony, indicate Petitioner's willingness to obtain a plea. Indeed, Petitioner's March 16, 2016 letter to Ms. Cimino clearly shows Petitioner was seeking a plea.

Petitioner's prior statements contradict what Petitioner is now telling this Court several years later regarding whether he agreed to the continuances entered in this case. His inconsistent statements are an important factor in this Court's finding that Petitioner is not credible on the issues of whether he agreed to continuances and whether Ms. Cimino was ineffective for failing to file a motion to dismiss the indictment. As Petitioner has now been convicted and sentenced, he has a strong motive to lie that was not present when he agreed numerous times in open court to continue his federal criminal case.

Compared to Petitioner's testimony, this Court finds Ms. Cimino's testimony credible. At the time, she had several years of experience as an attorney, including handling several federal

criminal matters. While it may be true none of those cases may have necessarily involved or implicated the IADA, Petitioner was clearly aware of the IADA given the colloquies Magistrate Judge Bongiovanni had with him in open court. Petitioner never objected to Ms. Cimino agreeing to continuances despite being right next to Ms. Cimino at several of the continuance hearings. Indeed, the record in this case indicates that when Petitioner was dissatisfied with something, he would let either Ms. Cimino or this Court know.

Upon hearing from both Ms. Cimino and Petitioner, this Court finds Petitioner's testimony is not credible as it relates to Ms. Cimino's purported ineffectiveness. The reason for the delay in this case was because Petitioner was seeking the best possible plea deal – one he ultimately agreed to.

C. <u>The extent to which the Petitioner asserted his speedy trial right</u>

As the numerous agreed upon continuances indicate, Petitioner did not assert his speedy trial right. His assertion that he wrote to the Court seeking his speedy trial rights is of little to no value given that he withdrew that letter. This Court does not find Petitioner credible on his argument that Ms. Cimino improperly pressured him to withdraw the letter. Rather, she expressed her opinion to Petitioner as to what the possible result would be if he wished to pursue what he initially outlined in is subsequently withdrawn letter. Accordingly, this factor does not weigh in Petitioner's favor.

D. <u>Prejudice</u>

Petitioner asserts he was prejudiced in three separate and distinct ways by the delay in his criminal case; namely: (1) the government received plea agreements from co-conspirators; (2) the delay affected Petitioner's state parole hearing; and (3) the delay allowed the government to obtain cellphone evidence. Each of these arguments is considered in turn.

First, this Court agrees with the government that it is pure speculation on Petitioner's part that the co-conspirators who pled would have testified on his behalf if not for the cooperating agreements they had with the government.

Next, Petitioner's argument that the delay affected his state parole hearing is misguided. Had Petitioner moved for a speedy trial, presumably the government would have brought Britt to trial. The case against Britt was strong given the wiretap information against him as outlined in the criminal complaint. (*See* Crim. No. 16-403-1, ECF 1 at 14-19). Had Petitioner then been convicted prior to any state parole hearing, the results of any state parole hearing could have been even worse given the possible additional conviction on Petitioner's record.

Finally, Petitioner argues he was prejudiced by the delay because this allowed the government to search and seize a contraband cellphone he was using while in prison in furtherance of the conspiracy. However, as indicated above, the case against Petitioner was already strong based on other wiretap evidence which implicated him. Furthermore, any prejudice befallen Petitioner using a contraband cellphone was Petitioner's own doing. Accordingly, this Court does not find this factor weighs in Petitioner's favor. At best, it is neutral.

E.  Summary

Upon analyzing the *Barker* factors, this Court finds that any speedy trial argument that Ms. Cimino would have made would have been meritless. Accordingly, this Court does not find that she rendered ineffective assistance of counsel.

V. **CERTIFICATE OF APPEALABILITY**

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28

U.S.C. § 2255. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Petitioner fails to show that he is entitled to a COA on his claim that trial counsel was ineffective in not moving for dismissal of the federal criminal action against him due to delay.

## VI. CONCLUSION

For the foregoing reasons, Petitioner's remaining claim that counsel was ineffective in failing to move for dismissal of the indictment due to delay is denied. A certificate of appealability shall not issue on this claim. An appropriate order will be entered.

s/*Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.

March 14, 2022